# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MATTHEW ALLEN HAWKES,<br><br>    Defendant. | No. CR 09-2235-TUC-RCC-CRP<br><br>**REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS EVIDENCE** |

Pending before the Court is Defendant's motion to suppress evidence. (Doc 28). In this motion, Defendant contends the border patrol agent did not have the requisite reasonable suspicion to stop his vehicle. The Government contests the motion arguing the border patrol agent did have reasonable suspicion to stop Defendant's vehicle. For the reasons discussed infra., the Magistrate Judge recommends that the District Judge, after his independent review, DENY the Motion to Suppress based on an illegal stop of Defendant's vehicle. (Doc 28).

## I. EVIDENTIARY HEARING

The Magistrate Judge held an evidentiary hearing on this motion on March 18, 2010. (Doc 36). At the evidentiary hearing, the Government produced the following witness to support its position:

- Gabriel Class, Senior Border Patrol Agent and K-9 officer employed by the Border Patrol for the last 5.5 years, who was working at the checkpoint on Highway 191, South of Willcox, Arizona for five months before the incident.

The following are the factual findings of the case from the evidentiary hearing. The facts are not contested by the parties.

## II. FACTUAL FINDINGS

### A. Checkpoint on Highway 191

At the evidentiary hearing Agent Class testified that since approximately March-April 2009, he was working at the Border Patrol checkpoint on Highway 191, south of Willcox, Arizona. This checkpoint was established in this area to stop illegal traffic. The checkpoint covers the northbound portion of the road and is equipped with a stop sign, speed limit signs, large traffic cones, flood lights, and a "speed bump" (a plastic cover crossing the road that contains the power cords for the trailer and the flood lights). While this was continually referred to by the Prosecution as to "speed bump", it was clearly there for electrical conduit. There was no testimony that this bump was striped or signed as a speed bump. Agent Class testified that the checkpoint operates at all times except when it is raining, in which case the stop and speed signs are removed, while the speed bump across the road is left in place as its removal is impossible. Agent Class testified that when the checkpoint is closed, the risk of alien or narcotics smuggling increases requiring border patrol agents to be more attentive than usual.

Because of the establishment of Highway 191 Checkpoint, as a matter of course, drug and alien smugglers try to avoid the checkpoint. On direct examination, Agent Class testified that illegal aliens and drug smugglers common attempt to circumvent the checkpoint area by using Kansas Settlement Road (or other small streets around the Highway 191 Checkpoint), continuing on Birch Road, exiting on Highway 191, then turning on Dragoon Road which provides direct access to I-10.

### B. Previous encounters

At the evidentiary hearing Agent Class testified that approximately a week before the incident at issue, he encountered Defendant Hawkes, where the latter was stopped and his vehicle, a Ford Escort, was searched following the alert of Agent Class's narcotics detecting canine. No drugs were found, but the trunk smelled like fresh marijuana and cologne, and the agents found burlap strands in the trunk. Agent Class testified that this kind of burlap is commonly used to carry marijuana, and drug smugglers often use strong cologne to conceal the odor of marijuana. Since no drugs were found, the agents let Defendant Hawkes pass the checkpoint.

Shortly before the incident at issue, the green Lexus in which Defendant Hawkes was stopped was also allegedly involved in criminal activity. A few days before the incident, other Border Patrol Agents stopped the same green Lexus in an area north of Checkpoint on Highway 191, an area commonly used to load narcotics. This vehicle was suspected in distracting the agents from the actual load site. Agent Class testified that he received an e-mail alert about this encounter from his colleagues.

### C. The stop on September 7, 2009

On September 7, 2009 the Highway 191 checkpoint was closed due to weather conditions, and Agent Class was patrolling the fixed location a few miles north of the checkpoint on Highway 191. He was driving his marked Border Patrol vehicle and was accompanied by his assigned narcotics-detecting canine. At approximately 7:10 a.m. Agent Class received a dispatch about the speeding green Lexus and the dispatch named Defendant Hawkes as the owner of the Lexus. Agent Class testified he recognized the name of Defendant Hawkes from his previous encounter which was the first factor to make Agent Class suspicious of criminal activity. Agent Class started following the green Lexus. The pursuit lasted over eight miles at speed approaching 90 mph. Agent Class testified that Defendant made a sharp left turn from Highway 191 to Dragoon Road in such a sudden manner that the rear end of the vehicle fish-tailed. Agent Class testified he wanted to wait

for the back up, but when the vehicle made such an abrupt turn, he considered this as an attempt to flee and turned on his emergency lights and executed the stop of Defendant Hawkes' vehicle.

Once Defendant pulled over and Agent Class approached the vehicle, Agent Class testified he noticed the smell of fresh marijuana. Agent Class requested consent for a canine inspection. Defendant consented and Agent Class's canine alerted on the trunk. In the trunk, agents discovered six bundles of marijuana, after which Defendant was arrested.

### III. ANALYSIS

Under the Fourth Amendment, a police officer cannot stop a vehicle without a reasonable suspicion of criminal conduct at the time of the stop. *United States v. Rodriguez*, 976 F.2d 592, 594 (9th Cir.1992). Reasonable suspicion is established when specific, articulable facts, together with objective and reasonable inferences, form the basis for suspecting that a person has committed or is about to commit a crime. *United States v. Salinas*, 940 F.2d 392, 394 (9th Cir.1991). To establish that a reasonable suspicion exists, the courts look into "totality of circumstances-the whole picture" where the following factors, not to the exclusion of others, may be considered:

> (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) previous alien or drug smuggling in the area; (5) behavior of the drive including obvious attempts to evade officers; (6) appearance or behavior of the passengers; (7) model and appearance of the vehicle; and (8) officer experience.

*United States v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir.1997) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). Government officers can refer to their past experience and training to articulate how their factual observations triggered their good-faith belief that criminal activity was afoot. *United States v. Cortez*, 449 U.S.411, 417-418 (1981). The burden of citing the "specific and articulable facts" is borne by the Government, while the burden of proof on the motion to

suppress evidence lies with the Defendant. *United States v. Willis*, 431 F.3d 709, 715 n. 5 (9th Cir.2005).

In the case in question, the Government cited the following factors to support reasonable suspicion: (1) the area where the incident took place is very close to the border and is notorious for alien and narcotic smuggling; and Agent Class, being an experienced border patrol officer, is familiar with previous alien and narcotic smuggling in the area and ways of circumventing of the Highway 191 checkpoint; (2) both the Defendant and his vehicle have been reported in previous encounters that were related to drug smuggling suspicion and failure to yield to law enforcement officers; (3) that the car was speeding and failed to slow down in a speed bump area; and (4) once Agent Class started following the Defendant's vehicle, the Defendant made an abrupt turn with a side slip ("fish-tailing").

### A. Area of the stop

At the evidentiary hearing Agent Class testified that the area where the incident occurred is known for drug and alien smuggling because of its proximity to the border. The drugs and alien smuggling was the reason for establishing the Highway 191 checkpoint in this area. Further, Agent Class testified that based on his experience of working at the Highway 191 checkpoint, he was aware of potential ways of circumventing the checkpoint by illegal narcotics and alien smugglers. In the opinion of Agent Class, Defendant's route was consistent with these common circumvention ways. This Court finds Agent Class's testimony as to his experience in this area reasonable and credible. The factor of a known area for criminal activities standing alone cannot be considered as creating reasonable suspicion, but together with other factors may cumulatively lead the court to conclusion that such reasonable suspicion existed at the time of the stop. *U.S. v. Sutton*, 794 F.2d 1415, 1426 (9th Cir.1986).

### B. Prior encounters

At the evidentiary hearing Agent Class testified that when he received the report on a green Lexus driving at a high rate of speed on the day of the incident he recognized the name of Defendant Hawkes indicated as the owner of the vehicle. The previous encounter stood out for Agent Class because Defendant Hawkes was suspected in drug smuggling and during that encounter he was nervous and acted in a bizarre way. The Government argues this formed a ground for reasonable suspicion for exercising a stop of Defendant's vehicle. Again, this alone cannot establish reasonable suspicion to support a stop, but "it is permissible to consider such a fact as part of the total calculus of information in these determinations." *Burrell v. McIlroy*, 464 F.3d 853, 858 (9th Cir.2006). Based on the agents' previous encounters with both Defendant Hawkes and his vehicle related to drug smuggling or distracting the agents from actual drug smugglers, this Court believes that Agent Class had a reasonable suspicion of drug smuggling at the time of the stop.

### C. Speeding and failure to slow down at the speed bump

Agent Class testified that on the day of the incident the Checkpoint on Highway 191 was closed due to weather conditions. While speed and stop signs are removed during the downtime of the checkpoint, the speed bump cannot be removed as its serves as a cover for the power cords for the flood lights. The Government contends that the Defendant did not slow down at the speed bump located near the Highway 191 checkpoint which was an additional articulable fact creating reasonable suspicion. This Court disagrees. Where the speed limit and stop signs are removed, the drivers do not necessarily know that there is a speed bump in the area, and a speed bump becomes nothing more than a natural unevenness of the road. Therefore, this Court does not consider this "speed bump" as a factor adding to creation of reasonable suspicion. Similarly, driving above the speed limit is common behavior not peculiar to people transporting illegal drugs. Officers claim suspicious behavior for cars speeding, driving the speed limit, and driving below the speed limit. Speed is not a factor supporting reasonable suspicion.

### D. Abrupt turn

Agent Class testified that after receiving a report on a green Lexus driving at a high speed rate, and the information on the vehicle registration, he started following Defendant's car. It took Agent Class a while to get behind the Defendant's vehicle. Agent Class's contention that Defendant Hawkes probably noticed the marked border patrol vehicle is reasonable. Thus, a sharp turn made by Defendant Hawkes at a high speed so that the rear of the vehicle fish-tailed, makes it reasonable to suspect that Defendant Hawkes was trying to flee by making such an abrupt turn.

The driver's behavior is one of the factors in the totality of circumstances. "[E]rratic driving or obvious attempts to evade officers can support a reasonable suspicion." *United States v. Brignoni-Ponce*, 422 U.S. at 885 (citing *United States v. Larios-Montes*, 500 F.2d 941 (CA9 1974); *Duprez v. United States*, 435 F.2d 1276 (CA9 1970)). In *Illinois v. Wardlow,* the Supreme Court held that:

> [I]t was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight-wherever it occurs-is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.

*Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (internal citations omitted). It is significant in this case that Agent Class did not testify to the usual litany of suspicious driving behavior: hands gripping steering wheel tightly at 11 and 20 o'clock, constant looking in rear view mirror, refusal to look over at officer, etc. Rather he testified to specific information legitimately gathered through law enforcement activity and logically considered with his law enforcement training. This is the type of law enforcement judgment the case law clearly seems to support.

Here, taken in totality, the abrupt turn of the Defendant by making a "fish-tail" together with the information on previous encounters with the Defendant and Defendant's

vehicle, as well as the area of the stop being known for alien and narcotic smuggling and circumvention of the border patrol checkpoint, are facts sufficiently specific and articulable for Agent Class to form reasonable suspicion. Based on the above, the Magistrate Judge recommends that the District Judge find that the border patrol agent had the requisite reasonable suspicion to stop the Defendant's vehicle.

## IV. RECOMMENDATION

The Magistrate Judge recommends that the District Judge, after his independent review, DENY Defendant's Motion to Suppress Evidence based on presence of reasonable suspicion to stop the Defendant's vehicle. (Doc 28).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: CR-09-2235-RCC.

DATED this 1st day of April, 2010.

_____
CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE